

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
10/07/2010

| | | |
|---|---|---|
| IN RE: § | | |
| KIRK FRANCESCHINI, § | Case No. 10-30550 | |
|    Debtor(s). § | | |
| § | Chapter 7 | |
| § | | |
| FORD MOTOR CREDIT CO. LCC, § | | |
|    Plaintiff(s) § | | |
| § | | |
| VS. § | Adversary No. 10-3175 | |
| § | | |
| KIRK FRANCESCHINI, § | | |
|    Defendant(s). § | Judge Isgur | |

## MEMORANDUM OPINION

Ford Motor Credit Company ("Ford Credit") seeks to have Kirk Franceschini's debt to Ford Credit declared nondischargeable under § 523(a)(4) or § 523(a)(6) of the Bankruptcy Code. Franceschini moved for summary judgment on the § 523(a)(4) claim for defalcation in a fiduciary capacity. The Court grants summary judgment in favor of Franceschini on the defalcation claim.

## Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## Background

Franceschini filed a chapter 7 bankruptcy petition on January 22, 2010. Ford Credit filed this adversary proceeding on April 19, 2010, seeking to have Franceschini's debt to Ford Credit declared nondischargeable under § 523(a)(4) for larceny, embezzlement, or defalcation in a fiduciary capacity or under § 523(a)(6) for willful and malicious injury.

**Ford's Allegations**

Ford alleges that Franceschini was a director, officer, and partial owner of a car dealership, Paramount Southwest Imports ("PSI"), which sold Mazda and Hyundai vehicles. Pl's First Am. Compl. ¶ 5, Doc. No. 19, at 2. PSI entered into contracts with Ford Credit. Pl's First Am. Compl. ¶ 6, Doc. No. 19, at 3. One of the contracts was the Automatic Wholesale Plan Application for Wholesale Financing and a Security Agreement ("Wholesale Agreement"), which provided that Ford Credit would finance Franceschini's wholesale purchase of vehicles. Pl's First Am. Compl. ¶ 6-7, Doc. No. 19, at 3.

In the Wholesale Agreement, Franceschini granted Ford Credit a security interest in "the products sold to PSI and all other assets of PSI, including but not limited to all motor vehicles, service parts and accessories, inventory of every kind, equipment, fixtures, furniture, demonstrators, service vehicles, supplies, machinery, accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligation[s] thereto[.]" Pl's First Am. Compl. ¶ 7, Doc. No. 19, at 3 (quoting Wholesale Agreement ¶ 4, Doc. No. 19-1, at 1). The Wholesale Agreement created a typical floor plan financing arrangement.

The Wholesale Agreement established duties by PSI. The Agreement provided that all proceeds of any sale, lease, or other disposition "shall be received and held by [PSI] in trust for Ford Credit and shall be fully and faithfully and promptly accounted for and remitted by [PSI] to Ford Credit[.]" Pl's First Am. Compl. ¶ 10, Doc. No. 19, at 4 (quoting Wholesale Agreement ¶ 5, Doc. No. 19-1, at 1). Additionally, the Agreement stated that "[a]ll funds or other property belonging to Ford Credit and received by [PSI] shall be received by Dealer in trust for Ford Credit and shall be remitted to Ford Credit forthwith." Pl's First Am. Compl. ¶ 10, Doc. No. 19, at 4 (quoting Wholesale Agreement ¶ 7, Doc. No. 19-1, at 2). Ford Credit alleges that PSI had

the duties to safeguard the vehicles, to hold proceeds of the vehicles in trust, and to remit the proceeds to Ford Credit.  Pl's First Am. Compl. ¶ 10-12, Doc. No. 19, at 4-5.  Ford Credit and PSI affirmed these obligations in a Forbearance Agreement, signed on January 21, 2009.  Pl's First Am. Compl. ¶ 11, Doc. No. 19, at 4-5.

Ford Credit alleges that PSI, acting by and through Franceschini, violated these duties.  Pl's First Am. Compl. ¶ 13, Doc. No. 19, at 5.  Franceschini sold and transferred vehicles without turning over the proceeds to Ford Credit.  Pl's First Am. Compl. ¶ 15, Doc. No. 19, at 6.  Instead of paying Ford Credit, Franceschini paid other vendors and creditors with the funds due to Ford Credit.  Pl's First Am. Compl. ¶ 18, Doc. No. 19, at 7.  Franceschini also paid money to Franceschini's other dealerships, to the wife of Franceschini's partner, and to Franceschini's son, and transferred vehicles to Franceschini's other dealerships.  Pl's First Am. Compl. ¶ 18, Doc. No. 19, at 7.

Ford Credit claims that Franceschini's actions constituted larceny, embezzlement, or defalcation in a fiduciary capacity and that his debt is nondischargeable under § 523(a)(4).  In the alternative, Ford claims that Franceschini committed a willful and malicious injury, creating a nondischargeable debt under § 523(a)(6).

## Procedural History

On July 21, 2010, the Court dismissed Ford Credit's larceny and embezzlement claims.  Doc. No. 17.  The Court converted Franceschini's motion to dismiss on the defalcation claim to a motion for summary judgment.  The Court also gave Ford Credit 21 days to file an amended complaint that adequately pleaded a willful and malicious injury claim.

Ford Credit filed its First Amended Complaint on August 11, 2010.  On the same day, Ford Credit filed a response to Franceschini's motion for summary judgment.  Franceschini filed

his reply on August 25, 2010. Franceschini's motion to dismiss the willful and malicious injury claim will be considered separately. The Court now considers Franceschini's motion for summary judgment with respect to the defalcation claim.

## Summary Judgment Standard

Summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(c); *Gray Law LLP v. Transcon. Ins. Co.*, 560 F.3d 361, 365 (5th Cir. 2009). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings.[1]

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine issue of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine issue of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) ("A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party."); *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754

---

[1] Rule 56 was amended, effective December 1, 2007. Although most changes were stylistic, the changes to Rule 56(c) were substantive. Prior to the amendment, Rule 56(c) provided that the Court "shall" grant summary judgment if the relevant criteria were met. Effective December 1, 2007, the word "shall" was changed to "should". The Committee Notes to the 2007 amendment state that the word "[s]hould" was substituted for "shall" to recognize that, "although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56 advisory committee's notes (2007). As one commentator noted, "[E]ven when a motion for summary judgment is properly made and supported, it need not be granted. Such a motion may be granted—indeed, it should be granted—but it does not have to be granted." Bradley S. Shannon, *Should Summary Judgment Be Granted?*, 58 Am. U. L. Rev. 85, 95 (2008).

(5th Cir. 2009); *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). Nevertheless, a court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The Court should not weigh the evidence inasmuch as a credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara v. Garber*, 353 F.3d 393, 403 (5th Cir. 2003); *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Sossamon*, 560 F.3d at 326; *U.S. v. 92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008). The non-moving party has a duty to respond with specific evidence demonstrating a disputed fact issue. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *92,203.00 in United States Currency*, 537 F.3d at 507. When identifying specific evidence in the record, the non-movant must "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004); *Raga v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Norwegian*

*Bulk Transp. A/S*, 520 F.3d at 412; *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). Movants who do not bear the ultimate burden of proof often seek summary judgment after discovery has produced insufficient evidence to support the non-moving party's claims. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The non-movant must "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue" rather than relying on conclusory allegations. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163–64 (5th Cir. 2006); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

Assuming that all of Ford Credit's factual allegations are correct, neither PSI nor Franceschini owed fiduciary duties to Ford Credit. The Wholesale Agreement granted Ford Credit a security interest in PSI's merchandise, but it did not create a fiduciary relationship between Ford Credit and PSI.

Under § 523(a)(4), debts for "fraud or defalcation in a fiduciary capacity" are excepted from discharge. This discharge exception was intended to reach "debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Tex. Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 (5th Cir. 1998).

The defalcation exception applies only when the creditor was the beneficiary of a

fiduciary relationship that existed prior to the alleged misconduct. *See Murphy & Robinson Inv. Co. v. Cross (In re Cross)*, 666 F.2d 873, 879 (5th Cir. 1982) (holding that § 17(a)(4) of the Bankruptcy Act, which corresponds to § 523(a)(4), applies only when the claimant was the beneficiary of the fiduciary relationship). The definition of "fiduciary" under § 523(a)(4) is controlled by federal common law. *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998). Exceptions to discharge are to be narrowly construed, and "the concept of a fiduciary under § 523(a)(4) is narrower than it is under the general common law." In the Fifth Circuit, fiduciary duties exist under § 523(a)(4) only where there is an express or technical trust. *Miller*, 156 F.3d at 602. To establish an express or technical trust, an agreement must (1) create a definable *res* and (2) impose "trust-like" duties. *See Tran*, 151 F.3d at 342-43 (stating the test for whether a statute establishes fiduciary duties).

   The Wholesale Agreement did not establish an express or technical trust. Although the Wholesale Agreement lists a specific class of property that could constitute a definable *res*, the Agreement does not impose trust-like duties on PSI. Trust-like duties include a duty that the trustee refrain from spending trust funds for non-trust purposes and a duty to segregate trust property from other property. *Tran*, 151 F.3d at 343-45. *See Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493 (4th Cir. 2008) (finding a debt nondischargeable because of defalcation in a fiduciary capacity where a security agreement included a requirement to segregate the proceeds of the collateral). Duties to remit proceeds and to account for collateral are insufficient, without more, to establish a fiduciary relationship. *Tran*, 151 F.3d at 345 ("[T]hese relatively prosaic duties [to remit and to account for and preserve proceeds] are insufficient to provide the legal foundation for a state's efforts to boot-strap a principal/agent relationship into a § 523(a)(4) relationship[.]").

Ford Credit alleges that the Wholesale Agreement required PSI to hold the proceeds from the sale of the collateral vehicles "in trust" and immediately to remit the proceeds to Ford Credit. Pl's First Am. Compl. ¶ 10-12, Doc. No. 19, at 4-5. According to Ford Credit, PSI was also required to safeguard the vehicles. Pl's First Am. Compl. ¶ 12, Doc. No. 19, at 5. These duties are insufficient to establish a fiduciary relationship between Ford Credit and PSI. The duties to remit proceeds and preserve collateral are typical of security agreements, and they do not transform a debtor-creditor relationship into a fiduciary relationship. *See Tran*, 151 F.3d at 345 (holding that the Texas lottery statute did not create a fiduciary relationship even though ticket sales agents had duties to account for and preserve lottery proceeds and to conduct bookkeeping).

The use of the phrase "in trust" in the Wholesale Agreement does not change the character of the debt. "The resulting obligation is not turned into one arising from a trust because the parties to one of the documents have chosen to speak of it as a trust." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 334 (1934) (holding that a creditor's security agreement with a car dealer for the purchase of automobiles did not create a trust).

Numerous courts have therefore held that even when a security agreement states that a debtor is to hold the collateral "in trust," the underlying debt relationship is not automatically transformed into a fiduciary relationship. *E.g.*, *Bombardier Credit, Inc. v. Theis (In re Theis)*, 109 B.R. 474, 475 (Bankr. M.D. Fla. 1989) (holding that the plaintiff had not alleged facts that would support a finding of a fiduciary relationship even though debtor had entered into a floor plan financing arrangement containing trust provisions); *Am Gen. Elec. Credit Corp. v. Tester (In re Tester)*, 62 B.R. 486, 491 (Bankr. W.D. Va. 1986) (holding that a security agreement did not create a fiduciary relationship even though it used trust language); *Congress Fin. Corp. v.*

*Levitan*, 46 B.R. 380, 385 (Bankr. E.D.N.Y. 1985) ("[A]n agreement which is essentially a commercial security agreement in which the creditor has used trust language and imposed obligations on the debtor to secure repayment of his loan does not create the fiduciary relationship required by § 523(a)(4)."); *Gen. Elec. Credit Co. v. Graham (In re Graham)*, 7 B.R. 5, 7 (Bankr. D. Nev. 1980) ("A trust clause inserted into a document which sets up a debtor-creditor relationship in an effort to assure the debtor's performance of its obligation does not create a trust. A fiduciary relationship requires a separate account.").

On the contrary, "[i]t is the character of the debt relationship and not its form that determines whether a fiduciary 'trust' relationship exists." *Tester*, 62 B.R. at 491. Here, the character of the debt relationship is that of a typical floor plan financing arrangement, not a fiduciary relationship.

In support of its argument that the allegations in the First Amended Complaint would uphold a finding of a fiduciary relationship, Ford Credit cites the Fifth Circuit's decision in *John P. Maguire & Co. v. Herzog*, 421 F.2d 419 (5th Cir. 1970). The court in *Herzog* upheld a district court's finding that a debt was nondischargeable under § 17(a)(4) of the Bankruptcy Act because the debtor, while acting as an officer, had misappropriated corporate funds to indemnify himself against loss at the expense of a secured creditor. *Id.* at 422. *Herzog* dealt with the question of whether a debtor's misappropriation rendered a debt nondischargeable when the underlying debt was created by contract. The court did not consider whether the debtor owed a fiduciary duty to the creditor. Later Fifth Circuit authority requires the creditor to be the beneficiary of a fiduciary relationship. *Cross*, 666 F.2d at 879. The Fifth Circuit also later held that a fiduciary relationship, under the Bankruptcy Code, requires an express or technical trust. *Miller*, 156 F.3d at 602; *Tran*, 151 F.3d at 342. This requirement was not present when the court decided *Herzog*

under the Bankruptcy Act. Accordingly, the Court finds *Herzog* inapposite.

Ford Credit also cites the Fourth Circuit's decision in *Strack*. The court in *Strack* held that a floor plan arrangement created a fiduciary relationship under § 523(a)(4). *Strack* is distinguishable from this case. The security agreement in *Strack* established trust-like duties that are not present in the Wholesale Agreement, particularly a duty "to separate proceeds, hold them for [the creditor's] benefit, and use them only once [the creditor] allowed." 524 F.3d at 500. The existence of a separate fund is a key factor in determining whether an express trust exists. *See Graham*, 7 B.R. at 7 (noting that a fiduciary relationship requires a separate account). *Strack* therefore does not control this case.

The Wholesale Agreement granted Ford Credit a security interest in the defined class of PSI's assets, but it did not establish an express or technical trust. Even if all of Ford Credit's allegations regarding the terms of the Wholesale Agreement and Franceschini's conduct are true, Ford Credit and PSI did not have a fiduciary relationship. Therefore, neither PSI nor Franceschini could have committed defalcation in a fiduciary capacity within the meaning of § 523(a)(4).

## Conclusion

The Court grants summary judgment in favor of Franceschini on Ford Credit's claim for defalcation in a fiduciary capacity.

SIGNED **October 7, 2010.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE