

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
04/20/2011

| | | |
|---|---|---|
| IN RE: § | | |
| KIRK FRANCESCHINI, § | Case No. 10-30550 | |
| Debtor(s). § | | |
| § | Chapter 7 | |
| § | | |
| FORD MOTOR CREDIT CO. LCC, § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | Adversary No. 10-03175 | |
| § | | |
| KIRK FRANCESCHINI, § | | |
| Defendant(s). § | Judge Isgur | |

## MEMORANDUM OPINION

Ford Motor Credit Company, LLC ("Ford Credit") seeks partial summary judgment on the issue of whether Defendant Kirk Franceschini willfully and maliciously injured Ford Credit. Ford Credit alleges that Franceschini improperly transferred proceeds from vehicle sales, which he was required under a wholesale agreement to pay to Ford Credit. Because there is a genuine issue of material fact as to whether Franceschini acted with malice, the Court denies summary judgment.

### Background

Franceschini filed a chapter 7 bankruptcy petition on January 22, 2010. Ford Credit filed this adversary proceeding on April 19, 2010, seeking to have Franceschini's debt to Ford Credit declared nondischargeable under § 523(a)(4) for larceny, embezzlement, or defalcation in a fiduciary capacity or under § 523(a)(6) for willful and malicious injury.

On July 21, 2010, the Court dismissed Ford Credit's larceny and embezzlement claims. ECF No. 17. The Court converted Franceschini's motion to dismiss on the defalcation claim to a

1

motion for summary judgment. The Court also gave Ford Credit 21 days to file an amended complaint that adequately pleaded a willful and malicious injury claim.

Ford Credit filed its First Amended Complaint, ECF No. 19, on August 11, 2010. On the same day, Ford Credit filed a response to Franceschini's motion for summary judgment. Franceschini replied on August 25, 2010.

Franceschini filed a motion to dismiss the adversary proceeding on September 1, 2010. ECF No. 22. Ford Credit responded to the motion to dismiss on September 22, 2010. ECF No. 25.

On October 7, 2010, the Court granted Franceschini's motion for summary judgment with respect to the defalcation claim. ECF No. 33. Ford's only remaining cause of action is its § 523(a)(6) action for willful and malicious injury. At a hearing on October 14, 2010, the Court denied Franceschini's motion to dismiss.

Ford Credit moved for partial summary judgment on the willful and malicious injury claim on February 18, 2011. ECF No. 44. Ford Credit stated that it sought summary judgment on the issue of liability, but did not seek summary judgment on damages. Ford Credit alleged that it had inadequate financial records to determine the specific amount of the claim. Franceschini responded on February 23, 2011. ECF No. 52. Ford Credit filed a reply on March 17, 2011.

## Ford Credit's Allegations

Ford alleges that Franceschini was a director, officer, and partial owner of a car dealership, Paramount Southwest Imports ("PSI"), which sold Mazda and Hyundai vehicles. Pl's First Am. Compl. ¶ 5, ECF No. 19, at 2. PSI entered into contracts with Ford Credit. Pl's First Am. Compl. ¶ 6, ECF No. 19, at 3. One of the contracts was the Automatic Wholesale Plan

Application for Wholesale Financing and Security Agreement (the "Wholesale Agreement"), which provided that Ford Credit would finance Franceschini's wholesale purchase of vehicles. Pl's First Am. Compl. ¶ 6-7, ECF No. 19, at 3.

In the Wholesale Agreement, Franceschini granted a purchase money security interest to Ford Credit in "the products sold to PSI and all other assets of PSI, including but not limited to all motor vehicles, service parts and accessories, inventory of every kind, equipment, fixtures, furniture, demonstrators, service vehicles, supplies, machinery, accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligation[s] thereto[.]" Pl's First Am. Compl. ¶ 7, ECF No. 19, at 3 (quoting Wholesale Agreement ¶ 4, ECF No. 19-1, at 1). The Wholesale Agreement created a typical floor plan financing arrangement. Franceschini was required, when he sold a vehicle, to hold the proceeds in trust and to pay Ford Credit the funds advanced on the vehicle. Pl's First Am. Compl. ¶ 10, ECF No. 19, at 4.

The Wholesale Agreement was supported by a Continuing Guaranty, signed by Franceschini, and by an Assignment of Receivables and a Security Agreement granting Ford Credit a security interest in additional assets. On January 21, 2009, Ford Credit and PSI entered into a Forbearance Agreement and Assignment of Receivables. Franceschini, according to Ford Credit, violated these agreements (collectively, "floor-plan agreements").

Ford Credit alleges that Franceschini willfully and maliciously injured Ford Credit by (a) misapplying the funds PSI held in trust for Ford Credit; (b) failing to pay Ford Credit amounts due and owing and paying other creditors with property in which Ford Credit, at the least, held a security interest; and (c) transferring property in which Ford Credit, at the least, held a security interest. Pl's Am. Compl. ¶ 15, ECF No. 19, at 6; Mot. Summ. J. ¶ 2, ECF No. 44, at 2.

3

In its motion for summary judgment Ford Credit argues that the evidence demonstrates that Franceschini violated the floor-plan agreements with objective substantial certainty of harm or subjective motive to harm, and that his actions were not justified by the course of PSI's dealings with Ford Credit. Franceschini challenges many of Ford Credit's factual allegations and argues that any transfers among PSI and its affiliates had the purpose of maintaining operations and were justified by Ford Credit's acquiescence.

## Summary Judgment Evidence

In support of its motion for summary judgment, Ford Credit provides the following evidence: (i) the agreements between Ford Credit and PSI; (ii) Ford Credit's credit requests, incorporating field credit reviews; (iii) an independent auditor's report; (iv) correspondence by and between Ford Credit, Franceschini, and Mazda North American Operations; (v) monthly wholesale audits, (vi) correspondence from Ford Credit to PSI; (vii) correspondence from Ford Credit to PSI, Franceschini, and Franceschini's partner, Fernando Somoza; (viii) Franceschini's deposition, taken on March 14, 2009; (ix) Ford Credit Regional Manager Kurt Lauer's affidavit; and (x) subordination and pledge agreements. According to Ford Credit, this evidence demonstrates that Franceschini willfully used the funds from sales of vehicles, which ought to have been held in trust for Ford Credit, to pay other vendors and unsecured creditors.

Franceschini's summary judgment evidence includes: (i) Franceschini's affidavit; (ii) Ford Credit's summary report of the November 4, 2008 monthly audit of PSI; (iii) Ford Credit's summary report of the January 8, 2009 monthly audit of PSI; (iv) Ford Credit's summary report of the February 27, 2009 monthly audit of PSI; (v) an email from Lisa Lucia, Branch Asset Manager for Ford Credit, to Franceschini; (vi) Ford Credit's February 13, 2007 meeting summary and worksheet; (vii) Ford Credit's June 8, 2007 confidential internal Field

4

Credit Review for the period May 21-25, 2007; (viii) Ford Credit's Risk Rating Metrics for its May 2008 audit; (ix) Ford Credit's September 2007 audit from its field credit review; (x) Ford Credit's May 2008 audit from its field credit review; (xi) Ford Credit's monthly wholesale audits; and (xii) Franceschini's March 14, 2009 deposition transcript and exhibits.

In his affidavit, Franceschini admits to inter-company transactions, but asserts that any transactions that occurred were for the purpose of keeping PSI in business. Franceschini states, "No transfers were made to injure [Ford Credit] or to hinder, delay or defraud [Ford Credit] or any other creditors. To the contrary, all of the transfers were made to enable PSI to pay [Ford Credit] from time to time."

He also states that Ford Credit had been aware of PSI's inter-company loan transactions for several years. The rest of Franceschini's evidence is intended to support this statement. According to Franceschini, the various audits "demonstrate numerous, repeated and continuous violations by PSI in the magnitude of between $1 and $2 million since 2005." ECF No. 52, at 3.

## Summary Judgment Standard

Summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Gray Law LLP v. Transcon. Ins. Co.*, 560 F.3d 361, 365 (5th Cir. 2009). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings.[1]

---

[1] Rule 56 was amended, effective December 1, 2007. Although most changes were stylistic, the changes to Rule 56(c) were substantive. Prior to the amendment, Rule 56(c) provided that the Court "shall" grant summary judgment if the relevant criteria were met. Effective December 1, 2007, the word "shall" was changed to "should". The Committee Notes to the 2007 amendment state that the word "[s]hould" was substituted for "shall" to recognize that, "although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56 advisory committee's notes (2007). As one commentator noted, "[E]ven when a motion for summary judgment is properly made and supported, it need not be granted. Such a motion may be granted—

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine issue of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine issue of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) ("A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party."); *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009); *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). Nevertheless, a court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The Court should not weigh the evidence inasmuch as a credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara v. Garber*, 353 F.3d 393, 403 (5th Cir. 2003); *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting

---

indeed, it should be granted—but it does not have to be granted." Bradley S. Shannon, *Should Summary Judgment Be Granted?*, 58 Am. U. L. Rev. 85, 95 (2008).

*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Sossamon*, 560 F.3d at 326; *U.S. v. 92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008). The non-moving party has a duty to respond with specific evidence demonstrating a disputed fact issue. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *92,203.00 in United States Currency*, 537 F.3d at 507. When identifying specific evidence in the record, the non-movant must "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004); *Raga v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412; *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). Movants who do not bear the ultimate burden of proof often seek summary judgment after discovery has produced insufficient evidence to support the non-moving party's claims. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The non-movant must "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue" rather than relying on conclusory allegations. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163–64 (5th Cir. 2006); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Analysis**

Ford Credit seeks partial summary judgment on the issue of whether Franceschini willfully and maliciously injured Ford Credit within the meaning of 11 U.S.C. § 523(a)(6). The Court denies Ford Credit's motion. Franceschini has raised genuine issues of material fact as to whether malice may be inferred from the circumstances of the alleged transfers.

In order to prove willful and malicious injury, a creditor must establish "either an objective certainty of harm or a subjective motive to cause harm." *In re Miller*, 156 F.3d, 603 (5th Cir. 1998).

The creditor must also prove malice. Courts have not collapsed the "malicious" definition into the "willful injury" definition. "The Fifth Circuit has suggested that the Supreme Court in *Kawaauhau* [*v. Geiger*, 523 U.S. 57 (1998)] has collapsed the malicious definition into the willful injury definition. . . . But, as the Circuit itself notes, the Supreme Court addressed only a willful injury." *Mabank Bank v. Grisham (In re Grisham)*, 245 B.R. 65, 71 (Bankr. N.D. Tex. 2000) (citing *In re Caton*, 157 F.3d 1026, 1030 (5th Cir. 1998)). Therefore, "[i]n addition to willful, the injury must be 'malicious.' Malicious means 'without just cause or excuse.'" (citing *In re Garner*, 56 F.3d 677, 681 (5th Cir. 1995)).

Violations of security agreements are not *per se* malicious. *See Am. Honda Fin. Corp. v. Grier (In re Grier)*, 124 B.R. 229, 233 (Bankr. W.D. Tex. 1991) ("Simply because the sale was in violation of the security agreement and was in fact an intentional sale on the part of debtor should not be enough to trigger a finding of malice. If this were the case, then nearly any intentional conduct would fall within this exception to discharge, and the term 'malicious' would be effectively read out of the statute.").

Malice may be inferred if the debtor acts "in a manner which one knows will place a lender at risk, such as converting property in which the lender holds a security interest." *Theroux v. HSA Mortgage Co. (In re Theroux)*, 1995 WL 103342, at *3 (5th Cir. Feb. 27, 1995). Ford Credit provides evidence that Franceschini was aware of the requirements of the floor-plan agreements and that he had sufficient experience in the car business to know that a breach of the floor plan agreement would injure Ford Credit. They also present evidence that the funds from the sale of floor-financed vehicles were transferred to other vendors and unsecured creditors. ECF No. 44, at 10 (citing Pl's Ex. H, ECF No. 44-8, at 3-4 [p. 12-15]).

Because Ford Credit presents evidence that would entitle it to judgment at trial, the burden shifts to Franceschini to show that there is a genuine issue of material fact. Franceschini meets this burden. First, Franceschini challenges numerous factual issues regarding the alleged transfers of funds, raising a genuine issue as to whether malice should be inferred from the circumstances. Second, Franceschini argues that the reasons for his alleged violation of the floor-plan agreements demonstrate an absence of malice because any transfers were made (i) for the purpose of maintaining the business and (ii) with the belief that Ford Credit had acquiesced in his behavior.

Franceschini's affidavit challenges many of Ford Credit's factual allegations. Franceschini disputes the extent and nature of his alleged transfers to his affiliates, stating that he frequently made advances among his dealerships, but the advances were accounted for and were repaid in the regular course of PSI's business. ECF No. 52-1, at 2. Franceschini states that he did not advance substantially all of PSI's assets. ECF No. 52-1, at 2. He also states that he did not know that he was required to immediately remit the proceeds of sales to Ford Credit, that the

9

proceeds were to be held in trust for Ford Credit, or that the payment of creditors from PSI's operating account violated the floor-plan agreements. ECF No. 52-1, at 5.

Additionally, while Ford Credit asserts that twelve used cars were transferred but not paid for, Franceschini states that the used cars were not floor financed by Ford Credit and therefore PSI was allowed to use the proceeds. ECF No. 52-1, at 4. Franceschini disputes the circumstances of an alleged electronic fund transfer in February 2009, which was returned for insufficient funds. Franceschini states that the electronic fund transfer was initiated by Ford Credit, not by Franceschini. ECF No. 52-1, at 6.

Ford Credit argues that malice may be inferred from the circumstances of the alleged transfers—and they are correct. But inferences can be rebutted. These factual issues, taken together, raise a genuine issue of material fact as to whether malice should be inferred from the circumstances.

Moreover, to the extent that any transfers occurred in violation of the floor-plan agreements, Franceschini argues that he had just cause. A determination of just cause requires an examination of the relationships among the parties, the economic circumstances, and the reasonably held beliefs of the parties. *See Grier*, 124 B.R. at 232 ("[T]he court must look beyond the breach to the surrounding circumstances to divine whether there was some legitimate (or equitable) justification for the debtor's conduct."). If the transfers were, in fact, justified by the circumstances, then the § 523(a)(6) claim fails.

Any transfers that occurred, Franceschini states, were made for the purpose of "enabl[ing] PSI to pay [Ford Credit] from time to time." ECF No. 52-1, at 2. Franceschini's affidavit states that PSI and its affiliates routinely advanced funds to each other as needed. ECF No. 52-1, at 3. These transfers were made, he says, to enable PSI and the other dealerships to

meet their operating expenses. Actions in furtherance of keeping a business in operation may constitute "just cause." *See Grisham*, 245 B.R. at 73 (finding that using proceeds from cattle sales, in which the bank had a security interest, was not willful and malicious where "the Grishams sought to maintain their business with the intention of renewing the note with the payment of interest" to the holder of the security interest). Franceschini has established a genuine issue of material fact as to whether any alleged violations of the floor-plan agreements were done with malice.

Franceschini also provides evidence that could support a finding that Ford Credit acquiesced in PSI's business practices. A belief that the creditor has acquiesced in the debtor's business practices, including a practice of selling cars out of trust, constitutes "just cause or excuse." *Grier*, 124 B.R. at 233. As the court noted in *Grier*:

> Grier's conduct cannot be categorized as malicious. He knew what the agreement required, but his business relationship with AHFC was such that neither he nor AHFC really expected the monies received from the sale of inventory to be immediately remitted to AHFC. . . . There was . . . a reasonably held belief that AHFC had acquiesced in Grier's business practice, a circumstance which this court finds qualifies as a 'just cause or excuse' for his having failed to remit the proceeds to AHFC as the Security Agreement technically required.

*Id.* Therefore, when the debtor violates the terms of the agreement, but the creditor has acquiesced, the conduct may not be malicious under § 523(a)(6).

Franceschini argues that the evidence shows Ford Credit had long been aware that PSI was in non-compliance with the floor-plan agreements. ECF No. 52, at 19-20 ("[T]here was a long standing business arrangement that [Ford Credit] allowed PSI to be in non-compliance with the Agreements.").

Ford Credit provides the affidavit of Kurt N. Lauer, the Regional Manager for Ford Credit. Pl's Ex. I, ECF No. 44-9. Lauer states that "PSI had not sold a vehicle out of trust until March 3, 2009." ECF No. 44-9, at 5.

Franceschini argues, however, that Ford Credit's own evidence contradicts Lauer's statement. Ford Credit's Risk Rating Metrics indicate that as early as December 2006, PSI was technically 113.01% out of trust; by comparison, the industry standard is less than 10%. ECF No. 44-2, bates labeled FMCC 00580. In July 2007, PSI was 111.80% out of trust. ECF No. 44-2, bates labeled FMCC 00580. Franceschini also argues that Ford Credit's audit reports reflect a history of violations and a continuous pattern of vehicles sold and not paid for. ECF No. 52 (citing Pl's Ex. E, ECF No. 44-5, bates labeled FMCC 489-501). Without weighing the implications of these metrics, the Court cannot determine whether or not PSI had a long-standing practice of violating the floor-plan agreements and whether Ford Credit acquiesced to that practice.

Franceschini has established genuine issues of material fact as to whether malice may be inferred from the circumstances of the alleged transfers and whether he had just cause for violating the floor-plan agreements. These determinations would require weighing of the evidence, including making determinations of the credibility of Franceschini's affidavit and deposition testimony. The Court will not weigh the evidence at the summary judgment stage. Ford Credit's motion for partial summary judgment is therefore denied.

### Conclusion

Ford Credit's motion for partial summary judgment is denied.

SIGNED **April 19, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

12